EILEEN M. DECKER
United States Attorney
PATRICIA A. DONAHUE
Assistant United States Attorney
Chief, National Security Division
ANTHONY J. LEWIS (Cal. Bar No. 231825)
Assistant United States Attorney
Deputy Chief, Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-1786
     Facsimile: (213) 894-7631
     E-mail:  anthony.lewis@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2016 MAR 22 AM 11:36
CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIF.
LOS ANGELES
BY
FILED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>             v.<br><br>SU BIN,<br>   aka "Stephen Su,"<br>   aka "Stephen Subin,"<br>   aka "Steven Subin,"<br><br>             Defendant. | No. SA CR 14-131<br><br>PLEA AGREEMENT FOR DEFENDANT SU BIN |

1.    This constitutes the plea agreement between Su Bin ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

                    DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

a.    Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with a conspiracy in violation of Title 18, United States Code, Section 371.

b.    Not contest facts agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.    Make restitution in accordance with any order of restitution, and not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

h.    Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

THE USAO'S OBLIGATIONS

3.    The USAO agrees to:

2

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 12 below.

d.    At the time of sentencing, move to dismiss the underlying indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider the conduct underlying any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

e.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

f.    Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 25 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

3

g.    Recommend to the Court that the Court, in imposing defendant's sentence, recommend to the Bureau of Prisons that, when it calculates how defendant's sentence is served, defendant be given credit for the time spent in official detention in Canada awaiting extradition to the United States, pursuant to Title 18, United States Code, Section 3585(b)(1).

NATURE OF THE OFFENSE

4.    Defendant understands that for defendant to be guilty of the crime charged in count one, that is, conspiracy, in violation of Title 18, United States Code, Section 371, the following must be true:

a.    There was an agreement between two or more persons to commit one or more federal offenses (in this case, two federal offenses:  first, to violate the Computer Fraud and Abuse Act, Title 18, United States Code, Section 1030(a)(2)(C) and (c)(2)(B)(i); and second, to violate the Arms Export Control Act ("AECA"), Title 22, United States Code, Section 2778(c), and the International Traffic in Arms Regulations ("ITAR"), Title 22, Code of Federal Regulations, Parts 120-130);

b.    Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

c.    One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

5.    The first crime that was an object of the conspiracy (a violation of the Computer Fraud and Abuse Act, Title 18, United States Code, Section 1030(a)(2)(C) and (c)(2)(B)(i)), has the following elements:

4

a.    The defendant or a co-conspirator intentionally accessed without authorization a computer; and

b.    By accessing without authorization a computer, the defendant or a co-conspirator obtained information from a computer that was used in or affected commerce or communication between one state and other states, or between a state of the United States and a foreign country.

6.    The second crime that was an object of the conspiracy (a violation of the AECA, Title 22, United States Code, Section 2778(c), and the ITAR, Title 22, Code of Federal Regulations, Parts 120-130), has the following elements:

a.    Defendant or a co-conspirator exported information out of the United States by any means;

b.    The information was technical data, i.e., a defense article or related to a defense article listed on the United States Munitions List ("USML") set forth in the ITAR;

c.    Neither defendant nor any co-conspirator obtained a license from the Department of State, Directorate of Defense Trade Controls; and

d.    Defendant knew that exporting or disclosing the technical data without a license was illegal.

7.    Defendant understands that for defendant to be subject to the statutory maximum sentence set forth below, the government must prove beyond a reasonable doubt that, in conspiring to violate the Computer Fraud and Abuse Act, Title 18, United States Code, Section 1030(a)(2)(C), the offense was committed for purposes of commercial advantage or private financial gain. Defendant admits that the conspiracy to violate the Computer Fraud and Abuse Act that he

entered was for purposes of commercial advantage and private financial gain.

## PENALTIES

8. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is: 5 years' imprisonment; a one-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

10. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or

6

revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

11. Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

<u>FACTUAL BASIS</u>

12. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors to which the parties have agreed set forth in paragraph 14 below (noting that the parties do not agree as to the application of certain Sentencing Guidelines factors, as indicated in paragraphs 15 and 16) but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

a. Defendant is a citizen of the People's Republic of China ("China") and has maintained immigration status as a resident of Canada. Defendant owns and operates a business that deals in

7

aviation and aerospace technology, a field in which defendant is trained and knowledgeable.

b.     Unindicted Co-Conspirator 1 and Unindicted Co-Conspirator 2 were each citizens of China and located in China, which are facts defendant knew.

c.     Beginning in or about October 2008, and continuing to May 2014, defendant, Unindicted Co-Conspirator 1, and Unindicted Co-Conspirator 2 agreed to gain unauthorized access to the computers and computer networks of companies in the United States and elsewhere, and to obtain information from those computers, including sensitive and valuable military data that required a license for export from the United States, and to export that information out of the United States.  Defendant joined the conspiracy knowing that these were its objects.  The companies that owned, maintained, and used those computers were located in the United States, and those companies produced goods and technologies that were sold and shipped to customers, and were intended to be sold and shipped, in interstate and foreign commerce.  One such company was The Boeing Company ("Boeing").  Specifically, Boeing maintained multiple computer servers containing files relating to the C-17 military transport aircraft (the "C-17"), including servers in Orange County, California, containing detailed files necessary to make the component parts of the C-17.  The computers that were accessed without authorization in the course of the conspiracy were thus protected computers that were used in and affected interstate and foreign commerce and communication.  Over the course of the conspiracy, defendant was in the United States, China, Canada, and other countries.

8

d.    Defendant knew that neither he nor Unindicted Co-Conspirator 1 or Unindicted Co-Conspirator 2 were authorized to access the computers or the data on the computers to which they gained access in the course of the conspiracy.

e.    After Unindicted Co-Conspirator 1 gained access to information residing on computers of U.S. companies, he e-mailed defendant directory file listings and folders showing the data Unindicted Co-Conspirator 1 had been able to access.  Defendant then directed Unindicted Co-Conspirator 1 as to which files and folders Unindicted Co-Conspirator 1 should steal.  Defendant and Co-Conspirator 1 did this specifically with respect to data related to certain aircraft programs or technology.  Unindicted Co-Conspirator 1 then used the access he had gained to those victims' computers and stole the data that defendant had identified.  The conspiracy involved the use of sophisticated means and defendant caused the conduct constituting the sophisticated means, including Co-Conspirator 1's use of techniques to avoid detection when gaining and maintaining access to and stealing data from the victims' computers.

f.    Defendant, who operated a business that supplied aviation and aerospace equipment, translated the contents of certain data that defendant, Co-Conspirator 1, and Co-Conspirator 2 had stolen that was in English into Chinese.

g.    Defendant, Unindicted Co-Conspirator 1, and Unindicted Co-Conspirator 2 each wrote, revised, and e-mailed certain reports about the information and technology they had acquired by the hacking.  Those reports explained the value of the information and in some cases noted that the information was controlled for export from the United States.

9

h.   Defendant engaged in this conduct for the purpose of commercial gain, and specifically sought to profit from selling the data he and Unindicted Co-Conspirator 1 had acquired.

i.   Defendant and his co-conspirators knew and intended that the data they accessed and stole included data that was controlled for export from the United States.  The data defendant sought included technical data that was controlled for export because it was included on the USML and was subject to the ITAR, Title 22, Code of Federal Regulations, Parts 120-130.

j.   Defendant knew that it was illegal to send in any way military technical data that was controlled for export from the United States, without a license or authorization from an agency of the United States government.  Defendant knew it was illegal for defendant himself, Unindicted Co-Conspirator 1, and Unindicted Co-Conspirator 2 to gain access to and review the contents of files and documents on computer systems in the United States that contained export-controlled military data, and also that it was illegal to transmit those files out of the United States to any country without a license or authorization to do so.  Nonetheless that is what defendant and his co-conspirators intended to do in furtherance of the conspiracy.  Neither defendant nor anyone else ever obtained a license for the export or disclosure of any military technical data that was controlled for export form the United States.

k.   In furtherance of the conspiracy, defendant and other members of the conspiracy committed at least one overt act, including specifically the following:

(1)  On December 14, 2009, defendant sent an e-mail to Unindicted Co-conspirator 1 with a subject line of "Target."

10

Attached to the e-mail was a file containing the names and positions of U.S. executives as well as a website and telephone number.

(2)   On December 17, 2009, defendant sent an e-mail to Unindicted Co-conspirator 1 and copied Unindicted Co-conspirator 2 with a subject line of "RE: Target."   In that e-mail defendant identified e-mail addresses, a website, and four individuals associated with a European company.

(3)   On January 21, 2010, Unindicted Co-conspirator 1 sent defendant a file titled "C-17_2.rar" and asked defendant to write Unindicted Co-conspirator 1 a document about which files were important, which ones were not important, and what they were.

(4)   On January 23, 2010, defendant sent an e-mail to Unindicted Co-conspirator 1 with a subject line of "RE: C-17 _2," attached a document titled "Appendix 3.rar," and wrote that, judging from its name, the document looked fine.

(5)   On January 23, 2010, Unindicted Co-conspirator 1 sent an e-mail to defendant with a subject line of "Re: C-17 _2," and wrote that 3.txt was the list of documents.

(6)   On January 25, 2010, defendant sent an e-mail to Unindicted Co-conspirator 1 with a subject line of "Re: C-17 _2" and attached a document titled "Appendix-3.docx," which was a list of files and folders related to the C-17, with some files and folders highlighted in yellow.   In the e-mail defendant wrote that the useful ones were marked in yellow.

(7)   On February 28, 2010, defendant sent Unindicted Co-conspirator 1 an e-mail in which defendant wrote that the value was decent for a document related to a specific military aircraft.

(8)   On March 19, 2010, Unindicted Co-conspirator 1 sent defendant an e-mail with a subject line of "View picture." Unindicted Co-conspirator 1 attached to that e-mail an image of a list of seven filenames and a description of their contents, six of which files referred to "c-17" or "c17" in the name of the file.

(9)   On April 4, 2010, defendant sent Unindicted Co-conspirator 1 an e-mail asking Unindicted Co-conspirator 1 to take a look at a specific file.

(10) On April 4, 2010, Unindicted Co-conspirator 1 sent defendant an e-mail attached to which was an image showing a computer monitor displaying a presentation related to training on a U.S. military aircraft, which was marked proprietary and with an export control warning.

(11) On November 10, 2011, defendant edited a report that discussed how an identified non-U.S. entity had acquired research and development information that related to a specific military project that was subject to export restrictions, explained why that information was valuable, and sought support to complete its work in acquiring more information.

(12) On November 10, 2011, defendant sent an e-mail to Unindicted Co-conspirator 1 and Unindicted Co-conspirator 2. Attached to that e-mail was the report described in paragraph (11).

(13) On March 23, 2012, defendant modified a document related to a flight test plan for a U.S. military aircraft with different portions written in English and in Chinese that bore notations that it was proprietary information and subject to export restrictions.

(14) On May 3, 2012, defendant sent an e-mail to Unindicted Co-conspirator 1, attached to which was the document described in paragraph (13).

SENTENCING FACTORS

13.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

14.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

a.    Because defendant is charged with violating Title 18, United States Code, Section 371, U.S.S.G. § 2X1.1 applies.  Pursuant to U.S.S.G. § 2X1.1(a), the applicable offense level is the base offense level for the substantive offense that is the object of the conspiracy plus applicable adjustments.  The parties agree that the three level decrease pursuant to U.S.S.G. § 2X1.1(b)(2) does not apply.  Because defendant is charged with a conspiracy with two objects, each a different substantive offense, pursuant to U.S.S.G. § 3D1.2, comment 8, the Guidelines factors to which the parties have agreed for each substantive offense are set forth below.

b.    To the first object of the conspiracy, namely to violate the Computer Fraud and Abuse Act, Title 18, United States Code, Section 1030(a)(2)(C) and (c)(2)(B)(i), the following Guidelines apply:

Base Offense Level:                    6      [U.S.S.G. § 2B1.1(a)(2)]

Use of Sophisticated Means                          [U.S.S.G.

                                       +2      § 2B1.1(b)(10)(C)]

c.    To the second object of the conspiracy, namely to violate the AECA, Title 22, United States Code, Section 2778(c), and the ITAR, the following Guidelines apply:

Base Offense Level:                    26     [U.S.S.G. § 2M5.2(a)(1)]

15.    Defendant and the USAO, however, do not agree as to whether certain Guidelines enhancements and adjustments apply to the offense conduct.  For purposes of the object of the conspiracy that was to violate the Computer Fraud and Abuse Act, Title 18, United States Code, Section 1030(a)(2)(C) and (c)(2)(B)(i), defendant and the USAO agree that either party may argue that any of the following enhancements do or do not apply, and that while the government intends to recommend that the following enhancements apply and will submit evidence to support the facts necessary for their application, defendant contests their application and contends that they do not apply:

a.    The application of up to sixteen-levels of an enhancement based on the loss amount involved in the offense measured under the Guidelines, pursuant to U.S.S.G. § 2B1.1(b)(1)(I), which enhancement applies if the loss amount is more than $1,500,000.  The government agrees not to argue that the loss amount exceeds $2,000,000; and

b.    The application of a four-level enhancement based on the misappropriation of a trade secret that defendant knew or intended would benefit a foreign government, foreign instrumentality, or foreign agent, pursuant to U.S.S.G. § 2B1.1(b)(13)(B), or in the alternative, the application of a two-level enhancement based on the misappropriation of a trade secret that defendant knew or intended would be transported or transmitted out of the United States, pursuant to U.S.S.G. § 2B1.1(b)(13)(A).

16.    Defendant and the USAO also do not agree as to whether defendant is entitled to any decrease in his offense level based on an adjustment for mitigating role in the offense pursuant to U.S.S.G. § 3B1.2.

17.    The parties agree that the separate objects of the conspiracy group with each other for purposes of calculating the advisory Guidelines range pursuant to U.S.S.G. § 3D1.2(a), § 3D1.2(b), and § 3D1.2 comment 8.    Therefore the parties agree that the offense level applicable to the single group will be the offense level applicable to whichever of the two objects of the conspiracy that is higher, pursuant to U.S.S.G. § 3D1.3(a).    The maximum offense level that would result from this agreement, should the government recommend the reduction of three levels provided in paragraph 3.e, is 25.

18.    Aside from the specific Guidelines provisions discussed above and herein, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.    Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were

15

to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

19.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20.  Defendant understands that there is no agreement as to the application or amount of any restitution to any victim.

21.  Except as provided in paragraph 3.f, defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

22.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.  The right to persist in a plea of not guilty.

b.  The right to a speedy and public trial by jury.

c.  The right to be represented by counsel -- and if necessary have the court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the court appoint counsel -- at every other stage of the proceeding.

d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF RETURN OF DIGITAL DATA AND DOCUMENTS</u>

23. Understanding that pursuant to the request for assistance ("the Request") submitted on June 30, 2014, pursuant to the Mutual Legal Assistance Treaty between the U.S. and Canada ("the Treaty"), legal authorities in Canada have seized on behalf of the USAO and the Federal Bureau of Investigation ("FBI") digital devices and/or digital media and/or documents from defendant and his residence, and that such digital devices, digital media, and/or documents may contain proprietary information or information or data subject to the ITAR or to other U.S. export-control regulations that prohibit their export outside of the United States ("export-controlled information"), defendant will consent before Canadian Courts to the issuance of an unconditional Sending Order for the transmittal to the United States of all of the evidence seized pursuant to the Request. The USAO and the FBI agree to return to defendant the original documents as well as the original devices or original media themselves and any personal or business files thereon not

17

constituting export-controlled information or proprietary information after conducting a review of copies of the entire contents of those devices, media, and documents in a manner that allows for the USAO and FBI to determine whether they contain proprietary or export-controlled information, understanding that the USAO and the FBI will retain and use copies of the contents of the devices, media, and the documents in accordance with the Treaty.

## WAIVER OF APPEAL OF CONVICTION

24. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE
## AND WAIVER OF COLLATERAL ATTACK

25. Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 57 months' imprisonment, defendant gives up the right to appeal all of the following:  (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the court, provided it is within the statutory maximum; (d) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (e) any of the following conditions of probation or supervised release imposed by the Court:  the conditions set forth in General Orders 318, 01-05, and/or 05-02 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and

3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

26. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

27. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 37 months, the USAO gives up its right to appeal any portion of the sentence.

RESULT OF WITHDRAWAL OF GUILTY PLEA

28. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent

19

that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

29. Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

### EFFECTIVE DATE OF AGREEMENT

30. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

31. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

32. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge

that was either dismissed or not filed as a result of this agreement, then:

  a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

  b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

  c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND PROBATION OFFICE NOT PARTIES</u>

33. Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

34. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

21

to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 14 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

35.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

36.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional

promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

37.    The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

EILEEN M. DECKER
United States Attorney

_____          _March 10, 2016_
ANTHONY J. LEWIS                          Date
Assistant United States Attorney

_____          _2/17/16_
SU BIN                                    Date
Defendant

_____          _2/17/16_
ROBERT J. ANELLO                          Date
Attorney for Defendant Su Bin

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  This agreement has been read to me in Chinese, the language I understand best.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted

either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____        _2/17/16_____
SU BIN                                  Date
Defendant

## CERTIFICATION OF INTERPRETER

I _____ am fluent in the written and spoken English and Chinese languages. I accurately translated this entire agreement from English into Chinese to defendant Su Bin on this date. *Not needed. (BAJ)*

_____        _2/17/16_____
INTERPRETER SIGNATURE                   Date

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Su Bin's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set

24

forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____        2/17/16
ROBERT J. ANELLO                        Date
Attorney for Defendant Su Bin

25

# Exhibit A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

SU BIN,
  aka "Stephen Su,"
  aka "Stephen Subin,"
  aka "Steven Subin,"

        Defendant.

SA CR No. 14-131(C)

**FIRST SUPERSEDING INFORMATION**

[18 U.S.C. § 371: Conspiracy; 18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(B)(i): Unauthorized Computer Access; 22 U.S.C. §§ 2778(b)(2), (c), 22 C.F.R. §§ 121.1, 123.1, 127.1(a)(1), 127.1(a)(3), 127.1(a)(4), 127.1(d), 127.1(e): Arms Export Control Act]

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 371]

INTRODUCTORY ALLEGATIONS

At all times relevant to this Information:

1.    Defendant SU BIN, also known as ("aka") "Stephen Su," aka "Stephen Subin," aka "Steven Subin" ("defendant SU"), was a citizen of the People's Republic of China (hereinafter "China").

2.    Unindicted Co-conspirator 1 was a citizen of China and resided in China.

3.    Unindicted Co-conspirator 2 was a citizen of China and resided in China.

4.    Defendant SU, Unindicted Co-conspirator 1, and Unindicted Co-conspirator 2 e-mailed each other both in Chinese and English.

5.    The Boeing Company (hereinafter "Boeing"), headquartered in Chicago, Illinois, was a company with offices throughout the United States that developed and sold military and commercial aircraft, among other goods; technologies; and related support services. Boeing had facilities in many locations, including Seal Beach and Long Beach, California.  The goods and technologies Boeing sold to its customers were sold and shipped, and were intended to be sold and shipped, in interstate and foreign commerce.

6.    One of the aircraft models that Boeing manufactured was the C-17 military transport aircraft ("the C-17"), including variants of the C-17, which was manufactured in Los Angeles County, California, located in the Central District of California.  The C-17 was developed over multiple years and produced by Boeing and its predecessor and subcontractors pursuant to contracts with the United States Air Force at a cost of billions of dollars.  Developing and producing the C-17 required the use of export-controlled technical data.  Boeing maintained multiple computer servers containing files relating to the C-17, including servers in Orange County, California, containing detailed files necessary to make the component parts of the C-17.

7.    The F-35 "Lightning" was a fifth-generation fighter jet aircraft capable of supersonic speed and equipped with "stealth" capabilities that allowed it to evade radar ("the F-35").

2

8.  The F-22 "Raptor" was a fifth-generation fighter jet aircraft capable of supersonic speed and equipped with "stealth" capabilities that allowed it to evade radar ("the F-22").

9.  The Arms Export Control Act, Title 22, United States Code, Section 2778 ("AECA"), authorized the President of the United States to control the export of "defense articles" and "technical data" related to such defense articles by designating those items and that data as defense articles and by promulgating regulations for the import and export of such articles and data.

10.  Defense articles and technical data subject to such licensing requirements were designated on the United States Munitions List ("USML").  Those designations were made by the United States Department of State ("Department of State") with the concurrence of the United States Department of Defense ("Department of Defense"). (22 U.S.C. § 2778(a)(1); 22 C.F.R. § 120.2.)

11.  Category VIII of the USML, among others, included aircraft and aircraft-related equipment.  (22 C.F.R. § 121.1.)

12.  The AECA and its attendant regulations, the International Traffic in Arms Regulations, Title 22, Code of Federal Regulations, Parts 120-130 ("ITAR"), which contains the USML, required a person to apply for and obtain an export license from the Directorate of Defense Trade Controls ("DDTC") of the Department of State before exporting from the United States defense articles or related technical data by any means, including by disclosing technical data on the USML to a foreign person.  (22 U.S.C. § 2778(b)(2); 22 C.F.R. §§ 120.1, 120.10, 120.17.)

3

13. At no time did defendant SU apply for, receive, or possess a license to export defense articles or related technical data from the United States.

A.   OBJECT OF THE CONSPIRACY

14. Beginning in or about October 2008, and continuing up to and including at least in or about May 2014, in Orange County, within the Central District of California, and elsewhere, including outside the United States, defendant SU BIN, also known as ("aka") "Stephen Su," aka "Stephen Subin," aka "Steven Subin" ("defendant SU"), Unindicted Co-conspirator 1, Unindicted Co-conspirator 2, and others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed with each other knowingly and intentionally to commit an offense against the United States, namely:

a.   To intentionally access a protected computer without authorization, and exceed authorized access, and thereby obtain information from a protected computer, as that term is defined at Title 18, United States Code, Section 1030(e)(2), where the offense was committed for purposes of commercial advantage and private financial gain; and

b.   To willfully export and cause to be exported from the United States items designated as defense articles on the USML, namely technical data, including by means of disclosing such technical data to foreign nationals, without having first obtained from the DDTC the required export license or authorization for such export, in violation of Title 22, United States Code, Sections 2778(b) and (c), and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, 127.1(a)(1), 127.1(a)(3), 127.1(a)(4), 127.1(d), and 127.1(e).

4

A.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

15.    The objects of the conspiracy were to be accomplished in substance as follows:

16.    Defendant SU would e-mail Unindicted Co-Conspirators 1 and 2 the persons, companies, and technologies to target in order to obtain export-controlled technical data and other information through unlawful computer intrusions.

17.    Unindicted Co-Conspirator 1 would e-mail defendant SU information and files showing defendant SU the export-controlled technical data and other information and files to which Unindicted Co-conspirator 1 had gained access through unlawful computer intrusions.    Defendant SU would then advise Unindicted Co-conspirator 1 as to which information and files Unindicted Co-conspirator 1 should steal.    After gaining unauthorized access into various protected computers, Unindicted Co-conspirator 1 would then steal, copy, download, transmit, possess, and send the information and files that defendant SU had identified, without having obtained permission or authorization to export technical data out of the United States or to disclose it to foreign persons.

18.    Defendant SU, Unindicted Co-conspirator 1, and Unindicted Co-conspirator 2 would then write, revise, and circulate reports that described the export-controlled technical data and other information they and others had obtained by engaging in such computer hacking, the value of that information, the significance of the information in developing similar technologies, their progress, and their need to continue their computer intrusions.    The reports would also explain that the information was protected by U.S. export restrictions.

5

19. Defendant SU and Unindicted Co-conspirator 1 would communicate about selling some of the information that they had obtained as a result of their unlawful computer intrusions.

B.   OVERT ACTS

20. On or about the relevant dates listed herein, in furtherance of the conspiracy and to accomplish the object of the conspiracy, defendant SU, Unindicted Co-conspirator 1, Unindicted Co-conspirator 2, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California and elsewhere.  Those overt acts included committing computer intrusions, sending e-mails, drafting and revising reports and other documents, and other overt acts, and include, but are not limited to, the following:

Overt Act #1:  On December 14, 2009, defendant SU sent an e-mail to Unindicted Co-conspirator 1 with a subject line of "Target."

Overt Act #2:  On December 17, 2009, defendant SU sent an e-mail to Unindicted Co-conspirator 1 and copied Unindicted Co-conspirator 2 with a subject line of "RE: Target."

Overt Act #3:  On January 21, 2010, Unindicted Co-conspirator 1 sent defendant an e-mail attaching a file titled "C-17_2.rar."

Overt Act #4:  On January 23, 2010, defendant sent an e-mail to Unindicted Co-conspirator 1 with a subject line of "RE: C-17 _2."

Overt Act #5:  On January 23, 2010, Unindicted Co-conspirator 1 sent an e-mail to defendant with a subject line of "Re: C-17 _2."

Overt Act #6:  On January 25, 2010, defendant sent an e-mail to Unindicted Co-conspirator 1 with a subject line of "Re: C-17 _2" and attached a document titled "Appendix-3.docx."

6

Overt Act #7: On February 28, 2010, defendant sent Unindicted Co-conspirator 1 an e-mail discussing a specific military aircraft.

Overt Act #8: On March 19, 2010, Unindicted Co-conspirator 1 sent defendant an e-mail with a subject line of "View picture."

Overt Act #9: On April 4, 2010, defendant sent Unindicted Co-conspirator 1 an e-mail asking Unindicted Co-conspirator 1 to take a look at a specific file.

Overt Act #10: On April 4, 2010, Unindicted Co-conspirator 1 sent defendant an e-mail attaching an image of a computer monitor.

Overt Act #11: On November 10, 2011, defendant edited a report related to a specific military project.

Overt Act #12: On November 10, 2011, defendant sent an e-mail to Unindicted Co-conspirator 1 and Unindicted Co-conspirator 2 attaching the report described in Overt Act #9.

Overt Act #13: On March 23, 2012, defendant modified a document related to a flight test plan for a military aircraft.

//

//

Overt Act #14:  On May 3, 2012, defendant sent an e-mail to Unindicted Co-conspirator 1 attaching the document described in Overt Act #11.

EILEEN M. DECKER
United States Attorney


PATRICIA A. DONAHUE
Assistant United States Attorney
Chief, National Security Division

CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, Terrorism and Export
   Crimes Section

ANTHONY J. LEWIS
Assistant United States Attorney
Deputy Chief, Terrorism and Export
   Crimes Section

8

## CERTIFICATE OF SERVICE

I, **CAREY P. CRONIN**, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**PLEA AGREEMENT FOR DEFENDANT SU BIN**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☒ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows: **SEE ATTACHMENT**

☐ By hand delivery, addressed as follows:

☐ By facsimile, as follows:

☐ By email, as follows:

☐ By Federal Express, as follows:

This Certificate is executed on **March 22, 2016** at Los Angeles, California. I certify under penalty of perjury that the foregoing is true and correct.

CAREY P. CRONIN
Legal Assistant

**ATTACHMENT U.S. v. SU BIN  SA CR 14-131**

**Brian James Hennigan**
Hueston Hennigan LLP
523 West Sixth Street Suite 400
Los Angeles, CA 90014
213-788-4340

**Brian A Jacobs**
Morvillo Abramowitz Grand Iason and Anello PC
565 Fifth Avenue
New York, NY 10017
212-880-9536

**Devin M Cain**
Morvillo Abramowitz Grand Iason and Anello PC
565 Fifth Avenue
New York, NY 10017
212-880-9425

**Marshall A Camp**
Hueston Hennigan LLP
523 West 6th Street Suite 400
Los Angeles, CA 90014
213-788-4351

**Robert J Anello**
Morvillo Abramowitz Grand Iason and Anello PC
565 Fifth Avenue
New York, NY 10017
212-880-9520