UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION - LOS ANGELES

*****************************************************************

UNITED STATES OF AMERICA,

PLAINTIFF,

V.

SU BIN,

DEFENDANT.

CRIMINAL DOCKET NO. 14-131
LOS ANGELES, CALIFORNIA
Wednesday, July 13, 2016
12:00 P.M.

*****************************************************************

TRANSCRIPT OF SENTENCING PROCEEDINGS
HEARD BEFORE THE HONORABLE CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE

OFFICIAL
COURT REPORTER: TERRI A. HOURIGAN, CRR, RPR
CERTIFIED REALTIME REPORTER
REGISTERED PROFESSIONAL REPORTER
312 N. SPRING STREET
LOS ANGELES, CALIFORNIA 90012
(213) 894-2849
Terri_Hourigan@cacd.uscourts.gov

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY. TRANSCRIPT PRODUCED BY COMPUTER.

APPEARANCES:

FOR THE PLAINTIFF: U. S. ATTORNEY'S OFFICE
BY: ANTHONY J. LEWIS, ESQ.
312 N. Spring Street
Room 1500
Los Angeles, California 90012
Tel: (213) 894-1786
anthony.lewis@usdoj.gov

FOR THE DEFENDANT: MORVILLO ABRAMOWITZ GRAND IASON & ANELLO, P.C.
BY: ROBERT J. ANELLO, ESQ.
DEVIN M. CAIN, ESQ.
BRIAN A. JACOBS, ESQ.
565 Fifth Avenue
New York, New York 10017
Tel: (212) 880-9536
dcain@maglaw.com
ranello@maglaw.com

HUESTON HENNIGAN, LLP
BY: MARSHALL A. CAMP, ESQ.
523 West 6th Street, Suite 400
Los Angeles, California 90014
Tel: (213) 788-4351
mcamp@hueston.com

ALSO PRESENT: SHIRU HONG, INTERPRETER

**P-R-O-C-E-E-D-I-N-G-S**

July 13, 2016

(COURT CALLED TO ORDER)

THE COURTROOM DEPUTY: Item No. 3, *CR-14-131, United States versus Su Bin*.

Counsel, can you state your appearances?

MR. LEWIS: Good afternoon, Anthony Lewis for the United States.

THE COURT: Good afternoon.

MR. ANELLO: Good afternoon, Your Honor. Robert Anello from Morvillo Abramowitz Grand Iason & Anello for Su Bin.

Along with me here today is Devin Cain from my office, and Marshal Camp from Hueston Hennigan.

12:23PM THE COURT: Good afternoon.

Okay. My apologize for the delay. We have been impaneling a jury and I don't know if we ever will have it impaneled, but we are forging ahead.

Let me just go over the preliminaries and give you a few 12:23PM of my first views before I turn it over to counsel to argue.

It appears that the presentence report in this case was disclosed on June 6, 2016.

The Court has reviewed the presentence report, the government's un-redacted response to the PSR as well as the 12:24PM government's redacted response to the PSR, the declaration of

Devin Cain in support of defendant's application to file under seal, and then defendant's un-redacted position re sentencing; and then finally, the letter reply that was filed by defense yesterday.

12:24PM Does that cover the territory?

MR. LEWIS: Your Honor, the government also filed a response to defendant's papers on Monday of this week and there was an addendum to the PSR that came out on the same day.

THE COURT: Okay. I believe I have seen the addendum to the PSR. The problem I may have is that I may not have seen your additional papers.

12:24PM Let's just be sure.

MR. LEWIS: Docket No. 86. I have a copy.

THE COURT: It was filed July 11?

12:25PM MR. LEWIS: Yes, Your Honor.

THE COURT: That, I have read. That, I have read. Mr. Anello, what do you have to add?

MR. ANELLO: Your Honor, also on our position we attached the objections to the PSR, which addressed the guidelines analysis. I assume you have read that?

12:25PM THE COURT: I have read those.

MR. ANELLO: Thank you.

THE COURT: I have read those.

Okay. I think the probation found an offense level of 25 and Criminal History Category of I.

12:25PM

Probation, while conceding the 57 months is a, quote, stiff sentence, recommends 57 months in custody.

The defendants -- the government agrees that 57 months in custody is the appropriate sentence. And I believe defendants argue that a variance is appropriate to a sentence of 30 months based on a minimum role, the fact that Mr. Su Bin has had no profits.

He waived extradition early on. He has been in prison for two years in two countries. The argument is that the conduct was aberrant.

There is further argument that he has generosity and a history of kindness and model life, vis a vis, his employees and other charitable matters are a basis for a downward variance.

I think also there is an argument there is no need for restitution, that the fine should be $10,000, as opposed to the 50,000 recommended by probation.

Although, I have not come to a final conclusion on these, I do think that the government has the better part of the argument here.

I certainly don't think you can say that the conduct is aberrant, and I certainly don't think that I can say that this defendant had -- was -- had a minimal role in this case.

And while I think it's laudable that he was generous to his employees and extremely kind, the fact is this is a very

serious theft of government secrets, and I know there is a dispute as to whether these are government secrets or not.

But it seems to me that the conduct is very serious. And for the reasons set forth in 3553(a), the Court has to be mindful of the seriousness of the offense, the seriousness of the charge to which the defendant has pled.

That said, what I really am a little bit confused on, I am quite certain that whatever sentence is imposed, it will probably be time served for the time in custody in the United States from February until now.

But I'm not clear what happens vis a vis the time in Canada, nor do I understand the conditions of confinement in Canada. And that is, at least, one of the subjects I would like to hear something about, because it may be that if BOP doesn't credit, then I should take that into consideration in calculating the sentence in this case.

MR. ANELLO: Your Honor, if I may?

THE COURT: Yes.

MR. ANELLO: I do want to address a couple of things.

But one thing is that we also did disagree with the guidelines analysis in terms of the value that was placed --

THE COURT: I'm aware of that.

MR. ANELLO: But with regard to Canada, he was held in that facility which is not that different than what was

here, okay. It's basically a jail -- pretrial detention facility. It is nothing better, and in some ways worse than the facilities here.

12:29PM We do ask the Court to make a recommendation to BOP under the provisions that are in the sentencing agreement which is U.S.C. -- 18, U.S.C., 3585(b)(1) that he be given credit for the time he served in Canada, but there is no guarantee what will happen.

12:29PM I know the government also agrees with the recommendations to Your Honor to make a recommendation to BOP.

Whatever sentence Your Honor gives, we would request that be done.

12:29PM But there is no guarantee that the proximate year or so -- I think it's more than a year that he spent in Canada, will necessarily be credited.

THE COURT: As I calculated it, it was 14 months in Canada, and then another six months here, more or less.

12:30PM MR. LEWIS: Your Honor, I believe he was arrested in June of 2014, and arrived in the United States in February. So doing some --

THE COURT: Okay. Then I'm wrong. So we're talking from June of 2014 -- I do have that down, and he came extradited to the U.S. in February of 2016, so we're really talking almost 18 months.

12:30PM MR. LEWIS: I believe approximately 20, Your Honor.

Just for the record, we waive extradition. He wasn't formally extradited.

THE COURT: I understand.

MR. ANELLO: Your Honor, correct, 20 months in Canada is what our calculation is.

12:30PM

THE COURT: Plus six months here.

MR. ANELLO: Correct.

THE COURT: And --

MR. LEWIS: May I make one point, Your Honor?

12:30PM

THE COURT: Sure.

MR. LEWIS: I believe the answer to the Court's question is fairly straight forward.

It is statutory that he is to be given credit for that.

I can represent to the Court that I have had the discussions with the Bureau of Prisons regarding how it would be calculated.

12:30PM

According to this statute, there is nothing to suggest that it wouldn't be -- he wouldn't be given credit for it.

So in the abstract, I mean, there might not be a guarantee, there is no reason to think the Bureau of Prisons would not calculate it that way.

12:31PM

So I think the answer is the Court to impose a sentence, and the Bureau of Prisons will calculate it. The government recommends to the Court that the Court recommend to the Bureau of Prisons that he be given credit for it, but I think the

12:31PM

Bureau of Prisons would be doing that anyway under the statute.

So I think the answer is fairly straight forward that whatever sentence is imposed by the Court, he's going to -- the count is going to start when he was arrested.

12:31PM THE COURT: Does defense disagree with that?

MR. ANELLO: Your Honor, I think there is no guarantee.

THE COURT: There is no guarantee, of course.

MR. ANELLO: But as part of the plea agreement, we 12:31PM asked the government to agree. The government does agree. We all make the same recommendation. I think we're on the same page in this courtroom on that.

As Your Honor knows, and as I'm told this by judges all of the time, you can't control the Bureau of Prisons.

12:32PM THE COURT: That is true. That is true.

Well, I will be quite honest. I think that a lot of arguments have been raised, and I'm willing to hear more from defense, but right now I do believe that the advisory guideline range of 57 months is probably appropriate, and particularly 12:32PM so, if we think that the defendant will have credit for the time served, because it does seem to me that he deserves credit for every moment he served in Canadian or American custody.

But then we have to get to the questions that I know you want to argue, Mr. Anello, what the loss is, and why there 12:32PM should be a downward variance and a variety of other issues.

But one thing I can tell you that probably you would be wasting your time on is the question of whether this is aberrant conduct. I just don't think it comes close to qualify for aberrant conduct.

12:33PM I'm happy to hear the other issues.

MR. ANELLO: Thank you, Your Honor.

Your Honor, and I also thank you for making the accommodation to fit us in. I see that you are incredibly busy, so as you know, this is an important day for Su Bin and 12:33PM his family.

And unlike many instances, he has taken exceptional responsibility for his acts here.

As you know, he waived extradition, saving the government time and money.

12:33PM He came -- he also agreed to have the evidence that was seized, turned over, another thing that was very significant for the government. He saved the government resources there.

When he came to the U.S., he did not seek bail. He pled guilty immediately. And the other thing to keep in mind, Your 12:34PM Honor, is we approached the government about that, about waiving extradition, about coming down here to plea.

It was Su Bin's decision, while in Canada, to do that, so we initially, and the government would agree, no doubt, that we made the initial approach to them.

12:34PM THE COURT: Let me just ask you this, Mr. Anello:

You know, if your client had been residing somewhere other than Canada where there was no extradition treaty, I could understand that waiving extradition gets gold stars.

But here, wasn't it a given he was going to be extradited and the smart thing to do was for him to waive extradition?

12:34PM

MR. ANELLO: Your Honor, I don't think it's a given. First of all, extradition from Canada could take six years.

THE COURT: I know that.

MR. ANELLO: And there are lots of issues with Canadian extradition.

12:34PM

THE COURT: He would be in custody in Canada for those six years, too.

MR. ANELLO: Correct. He likely would be, Your Honor. There was a bail-out application that still had to wind its way through the courts.

12:35PM

Regardless, Your Honor, I do think it wasn't an irrational decision. And I think one of the other things that he's done, and has agreed to do is to agree to deportation immediately upon the sentence, which is going to be a significant hardship.

THE COURT: I understand.

12:35PM

MR. ANELLO: It's going to be hardship, not only to him, but for his family because the deportation will be from Canada and from the U.S.

His family -- he's been married to his wife since 1999. They have two children in Canada, who were born in Canada.

12:35PM

And obviously he accepts the responsibility that his conduct brings this upon himself and his family, but it is going to be a substantial hardship.

12:35PM It's not something that the guidelines even take into consideration, and that's why we say, Your Honor, regardless of whether you look at the guidelines -- and I will address at least the one point in a moment -- but regardless of whether you use the guidelines that the government wants or the guidelines that we suggest which would include a different 12:36PM calculation for the loss, under 3553, the substantial responsibility he's taken and the consequences that he's going to face. He's going to be having to go back to China.

The business that he built -- which he built from at its peak before this disaster -- was up to 80 people. And you read 12:36PM letters from them, Your Honor. These are people who he has had a particularly -- touched the lives of. He's going to hope to try to rebuild the business.

It will be impossible. He will not be able to do business with the U.S., and as you could imagine that was a substantial 12:37PM part of the business.

He made harnesses for transportation for planes for other modes of transportation. And the importing of this, the function of the aspects of it from the U.S. will no longer be able to be done.

12:37PM He is unlikely to be able to get the business nearly where

it was before. There is no doubt that the Chinese businesses that deal with the U.S. will be shunning him. So he's going to have a tough row ahead of him.

12:37PM Your Honor, it is among those things that I would suggest to you, under 3553, needs to be taken into consideration.

If you have read the letters, and I'm sure you have, Your Honor. I think we have told you, we were inundated with letters.

12:37PM We have letters from his classmates who talk about having not seen him for 20 years, but then there was a reunion and they heard about -- he hears about his health problems, and he generously helped his classmate both financially and emotionally by getting his other classmates to rally around him.

12:38PM His other workers talk about the exceptional interest he has taken in connection with their pregnancies despite the one-child policy.

12:38PM The other things that I believe Your Honor hasn't appropriately taken into consideration under the guidelines but are under 2553, is the fact that he didn't profit. The government doesn't dispute that, that he didn't profit nor was he intending to profit.

12:38PM This was a hacking plot by two unindicted co-conspirators, no evidence he knew who they were. He met them socially. He made the biggest mistake of his life when he agreed to do what

they asked.

But there was no -- there was no commercial benefit to him, no payment to him, no expected payment to him.

12:38PM That, too, while we're not trying to minimize what he did, Your Honor, that, too, is something that Your Honor can take into consideration.

12:39PM And quite frankly, Your Honor, it very much distinguishes him from the case we cited that last week was decided where a Chinese national and the government says, "Oh gee, that stuff wasn't so important," night vision scopes.

And if you read the sentencing memo in that case by the government, that was extraordinarily -- the recently discovered -- developed government secret materials.

12:39PM The Court, in that case, in the *Chen* case, sentenced him to exactly what we have asked for, which is 30 months in jail.

And, Your Honor, in terms of 3553, in terms of some consistency, that sentence would be appropriate here.

12:39PM The Supreme Court has said you should not look at the guidelines as per se reasonable, that the elements under 3553 are equally significant.

With regard to the value, Your Honor, the government -- it's miraculous. The government has come up with three methods of valuation, and miraculously, all of them get to about the same number.

12:40PM If I had an accountant that could back into numbers that

effectively, I would probably be standing up here and explaining that conduct.

12:40PM First, they come up with three values: First one, they talk about, this is the only one they seem to be defending now, is that there is $200 a page number, and that magically is the right number.

They don't make any attempt to distinguish between simple, complex, or pages that are simply lists which many of these were -- lists of items.

12:40PM They don't -- they use a 2016 rate to come up with this $200 a page.

The conduct here stopped in 2014, went from 2008 to 2014, but more importantly, the programs including the F-16 program was 25 years old. The vast bulk of that project would have been done many years before. 12:41PM

There simply -- that valuation is -- it's a nice number and it seems to just fit the government's attempts at the guidelines, then they come up with two other valuations.

One of them was the value to Su Bin. Now keep in mind, no one ever sold a dollars worth of the information. 12:41PM

The government doesn't say it was sold to anyone, and they use this figure, they say, "Well, Mr. Su Bin thought it was worth this." And then they cite some e-mails. In those e-mails he said, "If you had the complete set of documents, it could be worth X," which suggests from that e-mail alone, they 12:41PM

didn't have the complete set of documents.

And then what does the government do? And for those that we don't have a value, we'll just double it. So we come up to a number and we double it.

12:42PM Your Honor, that isn't a basis that any Court or the guidelines have ever recognized.

And the final one they come up with, is about -- is ludicrous as it could be, where they say that the program that the unindicted co-conspirators ran, the government calculates that it was -- it cost them to run this program a certain amount of money; and therefore, that is the value.

And again, miraculously, 1.5 million.

Your Honor, if the get-away car was a Rolls Royce, and you stole the bag of costume jewelry, all of a sudden because it's a Rolls Royce, the costume jewelry is now gems.

That is, in fact, exactly what they do here, they add up three cars that the unindicted co-conspirators have, and say those three cars are very valuable, and therefore, the scheme which have been attributable to him, is worth a 1.5 million.

12:43PM Your Honor, I don't even begin to understand that, other than to say, that they were so desperate because their other theories don't work that they came up with this new novel theory that I have looked for an analogous situation; there isn't such a thing.

12:43PM Your Honor, the vast majority of cases similar to this

12:43PM have been sentenced well below the guidelines.

And in this case, the government is asking for something much harsher than those.

Indeed, Su Bin will go to a facility that is much harsher than the normal person would go to because he's a non-registered alien. He will not be able to go to what he would go to, which would have been a minimum security camp here. He will have to go to a higher-level facility.

That, too, Your Honor, is a reason why his incarceration should be lessened.

12:44PM

THE COURT: Well, I saw your argument in that regard, and I am not really convinced that the Bureau of Prisons offers the facilities you assume it offers, and I guess to the extent 3553(a) requires me to treat your clients similar to others who are similarly situated, obviously, we have people all of the time who come to this Court who are indicted as illegal aliens found in the United States who then do not get the same benefits that citizens get.

12:44PM

It seems to me that it would be very difficult for me to justify a variance based on those factors for your client when I can't do it as to anyone else.

12:44PM

MR. ANELLO: Your Honor, I don't think you can't do it for anyone else. I think if the individual is going to be in tougher incarceration conditions, indeed, Your Honor, I have seen judges reduce sentences after the incarceration for just

12:45PM

that reason.

A judge in New Jersey did it about two years ago to a witness that had been sentenced -- he was a cooperating defendant. Initially, he had been five years in jail, and one of the bases on which she reduced the sentence, was that he was a Canadian, not a Chinese national -- Canadian, and was in harsher conditions where -- because of the fact that he was not a permanent resident.

So, Your Honor, I do think that in any one situation when there are conditions of confinement that are going to be harsher, and it's absolutely not addressed by the guidelines.

THE COURT: Well, it isn't, you are exactly right. What I'm saying to you is I suppose you are correct that I have discretion, and I have discretion to do about whatever I want. But I mean, the fact of the matter is, if I'm going to treat your client similarly to others who come to this Court in this district, at least, we do not make exceptions or give variances because someone is not a citizen of the United States and can't avail himself of the same conditions of confinement as everyone else. So I feel a little silly doing that.

But again, I do understand the argument.

But my more fundamental question is based on what I know, and hopefully things have changed. You are positing a camp condition that I think barely exists in this country any more.

MR. ANELLO: Well, Your Honor, I think under the

Bureau of Prisons they still have the level of camp, minimum security, medium, and maximum.

And generally a white collar criminal defendant goes to a camp.

But, Your Honor, I raise that, notwithstanding alone, but as a constellation of argument as to why a sentence in the range that we have suggested is more appropriate.

It's more appropriate because most people committing an offense like this are sentenced -- the vast majority -- well below the guidelines.

It is appropriate because this is a time in a person's life, the time of sentencing when the things he has done good -- forget about aberrational or --

THE COURT: No doubt.

MR. ANELLO: -- but this is the time, if any, that a Court should consider the character and the government hasn't disputed his good character.

THE COURT: I agree.

MR. ANELLO: This is the time that the good deeds he has done in the past, and Your Honor has seen those letters -- this is a time where he should get credit for that.

We're not asking -- we're not asking for time served. We're not asking for anything extraordinary, Your Honor. But given his exceptional acceptance of responsibility, given his -- the past he has had where he has been a lawful person

12:48PM 12:48PM 12:49PM 12:49PM 12:49PM

both in the U.S., Canada, as well as his home country, he should be given some consideration for that.

And, Your Honor, given the hardships that his family has faced, they spent two and a half years or two years and two months without him. He is the sole source of support for them. His wife who used to be -- was a gynecologist when they met -- has not been able to work because of the language problem and because of rearing of the children.

He supports his first son who is a college student in Switzerland, with whom he's very close, and it's an extraordinary testament to him how he and the child's mother have maintained a very close relationship.

His son visits him in China almost yearly.

Given how much he has meant to so many people in his employment, we respectfully, Your Honor, ask you take all that into consideration, and under 3553, even if you disagree entirely with our analysis on the guidelines, that you sentence him to a sentence in the range of 30 months.

And Your Honor, thank you for taking the time and listening to me. I appreciate it.

THE COURT: Thank you. Okay, Mr. Lewis.

MR. LEWIS: Yes, Your Honor. To take the points in the order they were raised proximately.

First, it is true that the defendant did try to seek bail twice in Canada, each of those applications were denied by the

12:49PM 12:50PM 12:50PM 12:50PM 12:50PM

Court there, so he was likely to be detained for the duration of his time.

THE COURT: I think that's right. Obviously, extraordinary acceptance of responsibility is, I think, a fair point raised by defense.

So if you want to respond to that?

MR. LEWIS: Yes, Your Honor. And the response is both the terms on which the government has agreed to resolve this case by dismissing a number of other counts that face much more exposure by the recommendations it agreed to make to the Court in the plea agreement, those more than account for the fact the defendant has taken an early acceptance of responsibility.

I believe counsel mentioned that he didn't profit nor did he intend to profit.

THE COURT: Right.

MR. LEWIS: I would point the Court to the plea agreement which says defendant engaged in this conduct for the purpose of commercial gain and specifically sought to profit from selling data he and the co-conspirators had acquired.

So that was part of his objective.

Regarding the night vision equipment, the government simply does not think that is apples to apples comparing several rifle scopes to the design information for multiple military aircraft.

12:51PM As to the valuation, it is true that the government focused most of its effort on the cost analysis by Colonel Myers.

There were seven technical orders that were the basis of that, and the numbers used came out of contracts in 2010 between Boeing and the U.S. Air Force. The 4.1 hours per page, these weren't sort of drawn out of the hat.

More to the point, it's a model, but it's only based on seven files.

12:51PM In Exhibit 14, defendant encourages UC-1 to take all of the -- a complete set of the files. And then lo and behold, in Exhibit 3, UC-1 says, we have taken 85,000 files.

So the fact there is a cost model based on seven technical orders shows at a minimum it is a very conservative cost estimate.

12:51PM With respect to the majority of cases being below guidelines, as I mentioned, this is simply not like the majority of cases. The type of information that was at stake, the harm to national security that was at stake, and where the information was going to a front company for the Chinese military is certainly something the Court should take into consideration in evaluating this.

12:52PM With that, I don't have anything else, Your Honor, unless the Court has further questions from the government.

12:52PM THE COURT: No. Mr. Anello, do you have any further

response?

MR. ANELLO: Your Honor, again, he does raise the *Chen* case again, and I don't know if he has read it.

THE COURT: You need to go to the podium so the reporter can hear you. We can hear you but it is hard for the reporter.

MR. ANELLO: He raises the *Chen* case again. I don't know if he has read what his brethren in the government have said about the information there.

Here, we're talking about 25 year old information. We're not talking about billions of dollars to design an airplane. Even the government doesn't make that argument.

Okay, we're talking about information that does not go to the heart of anything here.

The other thing, the government -- he suggests, well it was going to a front company for the Chinese government -- no indication, despite what they have tried to piece together, that Su Bin knew that, Your Honor, who these people were.

He met them in a social gathering. They apparently knew him because he is an aviation buff, and they sought him out.

But there is no indication whatsoever that he understood who it was going to.

And if he's going to pull out the plea agreement, you can turn it upside down and inside out, and you don't see that, Your Honor.

12:53PM 12:54PM 12:54PM 12:54PM 12:55PM

And finally, Your Honor, with regard to acceptance of responsibility, he says, well, there were other things we could have charged him with.

Well, they didn't bring those charges, Your Honor. And the guidelines here, are based on AECA.

So I don't know what other things he thinks he should bring in. There was a plea agreement here where both parties agreed what was an appropriate plea.

There was no grand gift given that somehow the government -- that the Court should take a position of deciding what exceptional responsibility is. Your Honor, that is your role. His exceptional acceptance here, and his continued laboring under continued burdens for that is extraordinary, Your Honor.

I do not think -- clearly, he can't change where he was arrested being in Canada, he can't change any of that.

But he did come into this Court under very difficult circumstances, and circumstances Your Honor could understand of being a Chinese national, and having to go back to spend the rest of his life in China that make it extraordinary.

I really do think, Your Honor, you can't just take the government's view, that we could have charged him more, therefore, ignore his exceptional acceptance of responsibility.

It is indeed something for the Court to consider, and I appreciate that, Your Honor.

THE COURT: I agree, it is for the Court to consider. But Mr. Lewis, what do you have to say?

MR. LEWIS: Very briefly, the government did bring those charges and in the plea agreements the parties agreed that the Court consider the conduct underlying the indictment that was brought in this case.

Second, it is rare that there is as direct evidence as there is in this case of defendant's knowledge regarding who the information was intended for.

And finally, as to the age of the material, defendant's specific instructions to UC-1 were to look for materials from 1995 and before because that was the design phase of the C-17.

So the fact that it is older material, shows that it is exactly the type of information he was seeking and that was valuable.

THE COURT: All right. Well, here is what I'm thinking in this matter.

First of all, I do think that the defendant should be credited with extraordinary acceptance of responsibility.

I'm unpersuaded by defense arguments that this was just sort of an accidental taking of trade secrets or that there was no intent or any understanding what they would be used for.

I believe that Mr. Su Bin knew in fact that he was attempting to gain trade secrets which were matters of national security.

12:56PM

I do believe the government's calculation of loss is correct.

And I do believe that the defendant intended, as stated in his plea agreement, to have financial gain, if you will, by virtue of taking of this information.

This is a serious crime. I cannot tell you what other Courts would do. I can only look at the conclusions of the various experts as to whether this is highly sensitive material. I believe it is highly sensitive material.

12:57PM

And I think that 3553(a) counsels that I treat it as such, not that I try to make an independent evaluation of whether something is of national security or not, I think that there is compelling evidence that this is a matter of national security.

That said, I think two things are appropriate: I think

12:57PM

that I am prepared, based on the extraordinary acceptance of responsibility, to make a two-level variance to an offense level of 23, which yields an advisory range of 46 to 57 months.

Second, I certainly will recommend that Mr. Su Bin be credited for all time he has served in custody, both in Canada

12:58PM

and in the United States, but, it does seem to me that 30 months is inappropriate.

I do not believe that there is a basis for departing to 19.

I recognize that Mr. Su Bin has done very kind things for

12:58PM

others, and I think that the variance that I impose gives

12:58PM recognition to that.

As I said earlier, I do not think there is aberrant conduct here. This is calculated continuing conduct that was not some sort of accidental one-time event.

And I do think that Mr. Su Bin had a significant role and that he should not be given a minimal role -- reduction in this matter.

As far as the argument regarding his loss of opportunity to serve time in a camp, I have made earlier comments to that effect. We see defendants every single day who lose those opportunities because they are not citizens of the United States. And while I suppose I conceivably have discretion to take that into consideration, and probably do have discretion, I choose not to because I think to treat Mr. Su Bin differently than the other defendants who appear in this Court, would be unfair and would violate the intention of Section 3553(a).

So for those reasons, what I intend to do is impose a sentence of 46 months.

And before I do that, however, I'm going to leave an opening for counsel to respond if they have anything further to say.

MR. LEWIS: No, Your Honor, just two recordkeeping matters.

First, is the Court adopting the finding in the PSR in the guidelines calculations?

01:00PM 01:00PM 01:00PM 01:00PM 01:01PM

THE COURT: Yes, I am.

MR. LEWIS: Second, before I forget, I just want to make sure the record reflects while the defendant has waived an interpreter, there is interpreter in the Court who is available to assist him.

THE COURT: I see that. I appreciate that.

Mr. Anello, do you have anything further you want to add?

MR. ANELLO: Thank you for mentioning the interpreter. I promised her I would tell you she is sitting here as standby, I failed to do that. I apologize to the interpreter, Your Honor.

THE COURT: So the interpreter is standby?

MR. ANELLO: Standby.

THE COURT: Thank you.

MR. ANELLO: I appreciate your chambers arranging it for us, Your Honor, at the last minute.

There are two requests I have, Your Honor. You have already indicated that you will make the recommendation pursuant to Section 3585(b)(1).

There are two other recommendations we ask for, Your Honor.

One would be that there is a facility in Taft, which is in the LA area, which is a facility that he would be eligible for as far as I understand it.

THE COURT: I will make that recommendation to the

01:01PM BOP.

MR. ANELLO: Thank you, Your Honor.

The other recommendation, he be allowed to participate in Bureau of Prisons's Institutional Hearing Program for self-deportation.

It would expedite the deportation if he voluntarily does it, and there is Bureau of Prison's programs. We would ask you make that recommendation as well, Your Honor.

THE COURT: I will do that.

01:01PM MR. ANELLO: Thank you, Your Honor.

THE COURT: I will do that.

With that said, let's -- if Mr. Su Bin would approach the lectern with you, Mr. Anello.

MR. ANELLO: Yes, Your Honor.

01:01PM THE COURT: And I guess I didn't deal with restitution or fine.

Before we go on, the request is for fine of $10,000 rather than $50,000.

Based on the record before me, that seems to be

01:01PM appropriate, but if you disagree, Mr. Lewis, please let me know.

MR. LEWIS: The government recommended 100,000. I understand if the Court is willing to impose 50,000 recommended by probation, but given the defendant did seek to make profit

01:02PM from it, the government continues to recommend $100,000.

THE COURT: Well, I asked about $10,000. So you answered to that with $50,000.

MR. ANELLO: Your Honor, given the financial hardship his family is going to be facing and starting a new life in China, we would request that the $10,000 be the fine.

01:02PM

THE COURT: I think I will impose $10,000, recognizing that it is over the objection of the government.

What did we decide to do about restitution?

MR. LEWIS: No victim has sought restitution. The government doesn't believe restitution is appropriate at this time.

01:02PM

THE COURT: Okay. That's what I thought. Let's be clear on the record.

It is the ordered that the defendant shall pay to the United States a special assessment of -- thank you.

01:02PM

I am obviously not paying attention today. Before I proceed, if Mr. Su Bin wishes to speak, I would welcome his thoughts. I apologize for leaping ahead. I apparently have too many things happening at once today.

THE DEFENDANT: Your Honor, on behalf of my family, thank you.

01:03PM

THE COURT: Okay. Do you want to say anything further?

THE DEFENDANT: No.

THE COURT: All right.

01:03PM

THE DEFENDANT: I lost my words now.

THE COURT: Okay. It is ordered, then, that the defendant shall pay to the United States a special assessment of $100, which is due immediately.

01:03PM Any unpaid balance shall be due during the period of imprisonment at the rate of not less than $25 per quarter pursuant to the Bureau of Prisons Inmate Financial Responsibility Program.

It is ordered the defendant shall pay to the United States

01:04PM the total fine of $10,000, which shall bear interest as provided by law.

The fine shall be paid in full, no later than 90 days after sentencing.

The defendant shall comply with General Order 01-05.

01:04PM Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Su Bin, is hereby committed on the single count for superseding information to the custody of the Bureau of Prisons for a term of 46 months.

Upon release from imprisonment, the defendant shall be

01:04PM placed on supervised release for a term of one year under the following terms and conditions:

One, the defendant shall comply with the rules and regulations of the United States Probation Office General Order 0502, and General Order 0105, including the three special

01:05PM conditions delineated in General Order 0105.

01:05PM

Two, the defendant shall not commit any violation of local, state, or federal law or ordinance.

Three, during the period of community supervision, the defendant shall pay the special assessment and fine in accordance with this judgment and orders pertaining to such payment.

Four, the defendant shall comply with the immigration rules and regulations of the United States, and if deported from this country, either voluntarily or involuntarily, not re-enter the United States illegally.

The defendant is not required to report to the probation office while residing outside the United States.

However, within 72 hours from release from any custody or any re-entry to the United States during the period of Court-ordered supervision, the defendant shall report for instructions to the United States Probation Office located at the United States Courthouse, 312 North Spring Street, Room 600, Los Angeles, California, 90012.

Five, the defendant shall apply all monies received from income tax refunds to the outstanding Court-ordered financial obligation.

In addition, the defendant shall apply all monies received from lottery winnings, inheritance judgments, and any anticipated or unexpected financial gains to the outstanding Court-ordered financial obligation.

01:06PM Six, the defendant shall cooperate in the collection of DNA sample from the defendant.

The drug testing condition mandated by statute is suspended based on the Court's determination that the defendant poses a low risk for future substance abuse.

As previously indicated, the Court has adopted the findings in the PSR, including the offense level and the criminal history category and the loss amount.

01:07PM The Court has made a determination, however, to vary two levels based on the defendant's good acts during the course of his life as well as, and most importantly, his willingness to plead early and to waive extradition.

01:07PM So, for those reasons, the Court has departed two levels to impose a sentence of 46 months which the Court finds is adequate and not excessive.

In addition, however, the Court will recommend that the Bureau of Prisons provide defendant with credit for time served in custody both in Canada and in the United States.

01:08PM The Court further recommends that the defendant be placed at a facility -- the BOP facility at Taft, California.

And finally, the Court recommends that the defendant participate in the BOP program, which I think Mr. Anello has previously described which is --

01:08PM MR. ANELLO: That's okay. I should have had it with me. The BOP's Institution Hearing Program.

01:08PM
01:08PM
01:09PM
01:09PM

THE COURT: -- BOP's Institution Hearing Program.

And I think that concludes everything.

Obviously, Mr. Su Bin, to the extent that you wish to appeal from this sentence, you must do so within 14 days of today.

If you cannot afford counsel, counsel will be provided to you.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. Mr. Lewis?

MR. LEWIS: Your Honor, I just want to know that there was an appellate waiver.

In addition, the government moves to dismiss the underlying indictment in this case.

THE COURT: All right. I will grant your motion to do that, and note that there is an appellate waiver.

Thank you, counsel.

MR. ANELLO: Thank you, Your Honor. Thank you, again, for your courtesy and your time.

THE COURTROOM DEPUTY: This Court is in recess.

(Matter concluded at 1:09 p.m.)

* * *

REPORTER'S CERTIFICATE

I, Terri A. Hourigan, Certified Realtime Reporter, Official Court Reporter for the United States District Court, Central District of California, do hereby certify that the foregoing is a true and correct transcript to the best of my ability and understanding from the record of the proceedings in the above-entitled and numbered matter.

*s/Terri A. Hourigan*

Terri A. Hourigan, CRR, RPR
Certified Realtime Reporter
Registered Professional Reporter
Official Court Reporter
United States District Court
Terri_Hourigan@cacd.uscourts.gov